# United States Court of Appeals for the Federal Circuit

2008-1075

OLIVIA N. SERDAREVIC, M.D.,

Plaintiff-Appellant,

v.

ADVANCED MEDICAL OPTICS, INC.,
STEPHEN L. TROKEL, M.D., and VISX, INC.,

Defendants-Appellees,

and

FRANCIS A. L'ESPERANCE, JR., M.D.,

Defendant-Appellee.


Ira S. Sacks, Dreier LLP, of New York, New York, argued for plaintiff-appellant. Of counsel was Gerard F. Diebner.

Roger J. Chin, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California, argued for defendants-appellees Advanced Medical Optics, Inc., et al. With him on the brief was Ron E. Shulman.

Steven Mancinelli, Codispoti & Mancinelli, LLP, of New York, New York, argued for defendant-appellee Francis A. L'Esperance, Jr., M.D.

Appealed from: United States District Court for the Southern District of New York

Judge Denise L. Cote

# United States Court of Appeals for the Federal Circuit

2008-1075

OLIVIA N. SERDAREVIC, M.D.,

Plaintiff-Appellant,

v.

ADVANCED MEDICAL OPTICS, INC.,
STEPHEN L. TROKEL, M.D., and VISX, INC.,

Defendants-Appellees,

and

FRANCIS A. L'ESPERANCE, JR., M.D.,

Defendant-Appellee.

Appeal from the United States District Court for the Southern District of New York in case no. 06-CV-7107, Judge Denise L. Cote.

———————————————

DECIDED: July 16, 2008

———————————————

Before MICHEL, <u>Chief Judge</u>, LINN, <u>Circuit Judge</u>, and ZAGEL, <u>District Judge</u>.[*]

LINN, <u>Circuit Judge</u>.

In this case, we are called upon to resolve several issues relating to a claim by Olivia N. Serdarevic ("Serdarevic") that she is the inventor or co-inventor of technology related to laser vision correction disclosed in six United States patents issued between 1987 and 1998. Serdarevic brought suit on September 15, 2006, against the current owner of the patents, its corporate parent, and the named inventors, seeking correction

———————————————

[*] Honorable James B. Zagel, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

of inventorship and alleging state-law claims of unjust enrichment and fraud against the named inventors. The district court granted the defendants' motions for summary judgment on the basis of laches and the applicable state statutes of limitations. Serdarevic v. Advanced Med. Optics, Inc., 06-CV-7107, slip op. at 3, 27 (S.D.N.Y. Sept. 25, 2007).

We conclude that the district court did not abuse its discretion by holding that Serdarevic's inventorship claim was barred by laches. We likewise conclude that the district court correctly determined that Serdarevic's state-law claims were barred by the applicable statutes of limitations. Finally, we conclude that the district court did not abuse its discretion by denying Serdarevic's motion for discovery under Federal Rule of Civil Procedure 56(f) on either her laches claim or her state-law claims. We therefore affirm.

## I. BACKGROUND

Serdarevic is a physician who did her residency in the early 1980s at the Edward S. Harkness Eye Institute at Columbia Presbyterian Medical Center ("Harkness"). At the time of her residency, defendants Francis A. L'Esperance, Jr. ("L'Esperance") and Stephen L. Trokel ("Trokel") were ophthalmologists and attending physicians at Harkness.

Serdarevic claims that during her residency she invented the technology claimed in six patents: U.S. Patent No. 4,665,913; U.S. Patent No. 5,108,388 ("the '388 patent"); U.S. Patent No. 5,188,631; U.S. Patent No. 5,207,668; U.S. Patent No. 5,711,762; and U.S. Patent No. 5,735,843 (collectively, the "patents-in-suit"). L'Esperance is the sole inventor named on three of the patents, and Trokel is the sole inventor named on the other three. All six patents-in-suit have been assigned to

defendant VISX, Inc. ("VISX"), which is a wholly owned subsidiary of defendant Advanced Medical Optics, Inc. ("AMO"). Serdarevic claimed to be the sole inventor of the subject matter claimed in the '388 patent, and a co-inventor of the subject matter claimed in the other five.

In a declaration in opposition to defendants' motion for summary judgment, Serdarevic described her inventorship claims in detail. She claimed to have conceived of her invention between September 1979 and September 1983. During part of that time, Serdarevic participated in a clinical clerkship in Paris with Professor Marcel Massin ("Massin"), whom Serdarevic characterized as a prominent retinal laser specialist. Serdarevic discussed her research findings with Massin and engaged in what she characterized as a long-term continuing interaction with him from 1979 through 1982, including repeated discussion of the concepts that formed her invention. Serdarevic also described discussions that she had in 1980 with David Maurice, Ph.D. ("Maurice"), whom she characterized as a world-renowned researcher on corneal structure and wound healing. Finally, Serdarevic described her discussions in 1980 with Professor Richard Berson ("Berson"), a physical chemist at Columbia whose work had provided further evidence to Serdarevic that her invention would be suitable for use in corneal surgery. Massin, Maurice, and Berson all died between 2002 and 2003.

Serdarevic learned of the patents-in-suit in October 1998. Through an attorney, Serdarevic contacted VISX in 1999, claiming to be an inventor of the patents-in-suit and requesting a share of past and future royalties derived from the patents. In September 1999, VISX's counsel requested that Serdarevic provide documentation corroborating her inventorship claims, and Serdarevic's counsel agreed to do so. But Serdarevic did

not contact VISX again until after she filed her complaint in this action in September 2006.[1]

One of the patents-in-suit—the '388 patent—was the subject of reexamination proceedings initiated in January 1998. During her discussions with VISX in 1999, Serdarevic offered to support VISX's position during reexamination, indicating that Serdarevic was aware of the pending proceedings. The reexamination proceedings concluded in 2000, and a reexamination certificate issued on September 19, 2000.

Serdarevic filed her complaint in this action on September 15, 2006. On March 23, 2007, shortly after Serdarevic filed her second amended complaint, the defendants moved for summary judgment, or, in the alternative, to dismiss. In response, Serdarevic cross-moved for discovery pursuant to Rule 56(f), seeking discovery on two issues: "whether VISX and AMO would have made the same investments in the patents-in-suit despite her delay in filing suit, and whether the individual defendants received payments of any kind within the past seven years." Id. at 21.

The district court granted the defendants' motions for summary judgment and denied Serdarevic's cross motion for discovery. Id. at 3, 27. Specifically, the district court held that Serdarevic's inventorship claim was barred by laches and that her state-law claims were barred by the applicable statutes of limitations. Id. at 3, 23, 27. Serdarevic timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

---

[1] Serdarevic also claims that she had contact with the CEO of AMO about her patent rights in the area of laser vision correction in 2002. AMO did not acquire VISX until May 2005. Thus, at the time of Serdarevic's alleged contact with the CEO of AMO, AMO had no ownership interest in the patents-in-suit.

## II.  DISCUSSION

### A.  Laches

Laches is an equitable defense that may bar an inventorship claim.  See Lane & Bodley v. Locke, 150 U.S. 193, 201 (1893)  "The application of the defense of laches is committed to the sound discretion of the district court."  A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).  Thus, "[o]n appeal the standard of review of the conclusion of laches is abuse of discretion.  An appellate court, however, may set aside a discretionary decision if the decision rests on an erroneous interpretation of the law or on clearly erroneous factual underpinnings.  If such error is absent, the determination can be overturned only if the trial court's decision represents an unreasonable judgment in weighing relevant factors."  Id. at 1039.  Because the district court in this case decided laches on summary judgment, "there must, in addition, be no genuine issues of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered."  Id.

Serdarevic challenges the district court's laches determination on three grounds: (1) that the district court improperly relied on the presumption of laches; (2) that she presented sufficient evidence to rebut the presumption; and (3) that the defendants' unclean hands precluded them from relying on the laches defense.  We address each in turn.

### 1.  Presumption of Laches

"[A] delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993).  Serdarevic admits knowing of the issuance of the patents-in-suit in

October 1998. She did not file suit until September 15, 2006—nearly eight years later. Thus, as the district court correctly concluded, the presumption of laches applies.

Serdarevic argues that the presumption of laches should not apply as to her inventorship claim for the '388 patent, because the reexamination certificate for the '388 patent did not issue until September 19, 2000, and she brought suit just less than six years later, on September 15, 2006. Citing this court's decision in Vaupel Textilimaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870 (Fed. Cir. 1991), Serdarevic claims that "this Court has noted that the operative date for laches purposes is the date the reissue proceedings concluded, not when the party learned of the prior issuance." Appellant's Br. at 26 (citing Vaupel, 944 F.2d at 876-79). Thus, Serdarevic argues, under Vaupel, the issuance of a reexamination certificate resets the six-year clock for the presumption of laches.

Vaupel does not stand for this broad proposition. Vaupel was an infringement case, not an inventorship case. See 944 F.2d at 871. In Vaupel, the patentee learned of the infringing activity while the patent-in-suit was the subject of reissue proceedings before the PTO. Id. The accused infringer received notice of the reissue proceedings and participated in them. Id. The reissue proceedings concluded five years later, and the patentee brought its infringement action three years thereafter—a total of eight years after learning of the infringement. Id. at 876.

We held in Vaupel that the patentee's delay in bringing its infringement action was excusable because the patent owner was engaged in "other litigation"—namely, the reissue proceedings. Id. at 877. Because the infringer knew of and participated in the reissue proceedings, and because the patentee had made clear to the infringer that it

would bring an infringement action after the reissue proceedings concluded, the patentee's delay was excusable. Id. at 878 ("Where there is explicit notice of a reissue proceeding in which an alleged infringer actively participated, and the evidence as a whole shows that the accused infringer was in fear of suit, there is no further requirement to notify the alleged infringer of an intent to sue after the reissue proceeding has been concluded in order to avoid a holding of laches."). "What is important is whether [the defendant] had reason to believe it was likely to be sued" after the reissue proceedings concluded. Id.

In this case, the "other litigation" excuse applied in Vaupel is inapplicable. It was the defendants—not Serdarevic—that were engaged in reexamination proceedings before the PTO. Serdarevic was not engaged in any "other litigation" that would have excused her delay in bringing her ownership claim. Moreover, Serdarevic has offered no evidence suggesting that the defendants had reason to believe that they were likely to be sued once the reexamination proceedings were complete. See id.

Finally, Serdarevic has not identified any way in which the reexamination proceeding changed her inventorship claim. While she is correct that the claims of the '388 patent "could have been amended to limit or otherwise affect her claim of inventorship," Appellant's Reply Br. at 14, that mere possibility does not excuse her from asserting her claim. One thing is clear, and accordingly we so hold: there is no rule that the issuance of a reexamination certificate automatically resets the six-year clock for the presumption of laches in each and every case.

Here, there is nothing in the record to suggest that Serdarevic's inventorship claim arose during the reexamination proceedings or changed in any material way over

the course thereof. To the contrary, Serdarevic claimed to be the sole inventor of all of the claims of the '388 patent—both the claims that existed prior to reexamination, and those that were added during reexamination. The district court was correct to conclude that the presumption of laches applied.

Serdarevic also argues that a defendant cannot rely on the presumption alone, but must present affirmative evidence of prejudice. This is wrong as a matter of law. Once the presumption of laches has attached, "the defendants could have remained utterly mute on the issue of prejudice and nonetheless prevailed." Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996). The district court therefore committed no error by holding that the presumption alone—if not rebutted—entitled the defendants to summary judgment.

2. Rebuttal of Laches Presumption

A patentee can rebut the presumption of laches "by offering evidence to show an excuse for the delay or that the delay was reasonable" or by offering evidence "sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue." Aukerman, 960 F.2d at 1038; see also Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1297 (Fed. Cir. 2004) ("The laches defense has two underlying elements: first, the [plaintiff's] delay in bringing suit must be 'unreasonable and inexcusable,' and second, the [defendant] must have suffered 'material prejudice attributable to the delay.'" (quoting Aukerman, 960 F.2d at 1028)). The district court held that Serdarevic had not met her burden of production on either reasonable delay or prejudice.

Serdarevic argues that her eight-year delay in bringing suit was reasonable or excusable because of her unfamiliarity with the U.S. patent system, her inability to obtain legal counsel, and her efforts to license her inventorship rights. The district court

considered these excuses, but found them insufficient to rebut the presumption that her delay was unreasonable. Serdarevic, slip op. at 18. We agree. While Serdarevic herself may have been unfamiliar with the U.S. patent system, she was represented by patent counsel in 1999. Her personal lack of familiarity with the patent system therefore does not excuse her failure to file suit. Nor can her later inability to find counsel willing to pursue her claims on a contingency basis excuse her delay. "A patentee's inability to find willing counsel . . . is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit." Hall, 93 F.3d at 1554. Finally, Serdarevic does not explain—and we do not understand—why her ongoing efforts to license her inventorship rights would prevent her from bringing suit to correct inventorship. If anything, her interest in licensing her claimed invention should have provided a strong incentive for her to correct inventorship as soon as possible. Even taken together, Serdarevic's excuses are insufficient to rebut the presumption that her eight-year delay was unreasonable. There is no basis for us to conclude that the district court abused its discretion when it concluded that Serdarevic's delay was unreasonable.

Nor did the district court abuse its discretion when it concluded that Serdarevic failed to rebut the presumption of prejudice:

> Material prejudice . . . may be either economic or evidentiary. Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts. . . . Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit."

Aukerman, 960 F.2d at 1033 (citations omitted). The district court held that Serdarevic had failed to meet her burden to rebut the presumption of evidentiary prejudice,

because three witnesses with knowledge of Serdarevic's inventorship claim—Massin, Maurice, and Berson—all died during the period of her delay, and because of the "cumulative and inherent prejudice from the dimming memories of all participants, including Serdarevic herself." Serdarevic, slip op. at 18. Because it concluded that Serdarevic had failed to meet her burden of production on evidentiary prejudice, the district court did not reach the issue of economic prejudice.

Serdarevic argues that the district court erred in finding evidentiary prejudice, because the three deceased witnesses were not material. Specifically, she claims that the witnesses would only confirm her inventorship claim, that both parties had sufficient documentary evidence to decide the issue of inventorship without their testimony, and that she was willing to forego any reliance on the deceased witnesses. Serdarevic's claim that the witnesses are unimportant is belied by her discussion of interactions with each of the witnesses in the portion of her declaration describing the conception of her invention. As the district court concluded, the witnesses "were each important enough to the historical record for Serdarevic to describe her work with them in the declaration she submitted in opposition" to defendants' motion for summary judgment. Id. Moreover, Serdarevic's willingness to forego reliance on the witnesses does not undo the prejudice to the defendants. There are no declarations by the witnesses in the record, and the defendants have had no opportunity to question them. Thus, as the district court concluded, "their deaths prevent the defendants from fully investigating Serdarevic's claims." Id. We therefore conclude that the district court did not abuse its discretion by finding that Serdarevic had failed to rebut the presumption of evidentiary prejudice.

### 3. Unclean Hands

Under the unclean hands doctrine, "[e]ven if unable to overcome the presumption, a [plaintiff] may be able to preclude application of the laches defense with proof that the [defendant] was itself guilty of misdeeds towards the [plaintiff]." Aukerman, 960 F.2d 1038. To succeed in an unclean hands claim, a plaintiff is required to show that the defendant has "engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." See id. at 1033 (citing Bott v. Four Star Corp., 807 F.2d 1567, 1576 (Fed. Cir. 1986)). But it is not enough merely to show misconduct. See Yeda Research & Dev. Co. v. ImClone Sys. Inc., 443 F. Supp. 2d 570, 629-30 (S.D.N.Y. 2006) ("Because we find that defendants' hands are unclean, i.e., they are responsible for plaintiff not finding out about their patent applications, the laches defense is unavailable to defendants."); see also Potash Co. of Am. v. Int'l Minerals & Chem. Corp., 213 F.2d 153, 155 (10th Cir. 1954) ("If the party which advances the defense of laches is responsible for the delay or contributes substantially to it he cannot take advantage of it."); Bound v. Spencer Gifts, Inc., No. Civ. A. 95-2216, 1996 WL 556657, at *4 (E.D. Pa. Oct. 1, 1996) ("The doctrine of 'unclean hands' applies to cases of an exceptional character, such as where a defendant was responsible for plaintiff's delay or affirmatively allayed the plaintiff's suspicions through deception."). Thus, we hold that in the context of an inventorship action, a plaintiff relying on the unclean hands doctrine to defeat a defense of laches must show not only that the defendant engaged in misconduct, but moreover that the defendant's misconduct was responsible for the plaintiff's delay in bringing suit.

In this case, Serdarevic has not expressly identified the conduct by the defendants that she claims gives rise to her unclean hands defense. See Appellant's

Reply Br. at 28 (arguing only that "Serdarevic provided an ample record of the Defendants' unclean hands."). It appears from Serdarevic's citations to the record that she claims that the defendants' "particularly egregious conduct" was the omission of Serdarevic as a co-inventor of the patents-in-suit and the concealment of the patent applications from Serdarevic. See Appellant's Br. at 43. However, Serdarevic has not identified any way in which the alleged misconduct of the defendants was responsible for her delay in bringing her claim after she learned of the patents-in-suit in 1998. Moreover, the misconduct on which Serdarevic appears to base her unclean hands claim is the very same conduct that forms the basis for her inventorship claims— namely, the defendants' failure to name her as an inventor of the patents-in-suit. If the failure to name an inventor were sufficiently "egregious conduct" to give rise to an unclean hands claim, then laches would never be available as a defense to an inventorship claim. Because the defendants' alleged misconduct was not responsible for Serdarevic's delay, the district court was correct to conclude that the defendants' laches defense was not precluded by unclean hands.

## B. State-Law Claims

"This court reviews the district court's grant or denial of summary judgment under the law of the regional circuit." MicroStrategy, Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1349 (Fed. Cir. 2005). Under applicable Second Circuit law, "[w]e review de novo the district court's determination that plaintiff's claims are barred by the statute of limitations." Kronisch v. United States, 150 F.3d 112, 120 (2d Cir. 1998).

### 1. Unjust Enrichment

The statute of limitations in New York for unjust enrichment is six years. Lawyers' Fund for Client Prot. v. Gateway State Bank, 658 N.Y.S.2d 705, 827 (N.Y.

App. Div. 1997); see also N.Y. C.P.L.R. 213(1) (McKinney 2003) (applying six-year statute of limitations to actions "for which no limitation is specifically prescribed by law"). "The statute of limitations for a claim of unjust enrichment begins to run 'upon the occurrence of the wrongful act giving rise to a duty of restitution.'" Golden Pac. Bancorp v. Fed. Deposit Ins. Comm'n, 273 F.3d 509, 520 (2d Cir. 2001) (quoting Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp., 596 N.Y.S.2d 435, 437 (N.Y. App. Div. 1993)).

There is no evidence in the record that either Trokel or L'Esperance—against whom Serdarevic asserted her unjust enrichment claim—received any remuneration from the patents-in-suit within the six-year limitations period. To the contrary, the district court found—and Serdarevic does not dispute—that Trokel and L'Esperance fully assigned their rights to the patents-in-suit more than six years before Serdarevic filed her complaint. Serdarevic, slip op. at 18. Trokel and L'Esperance each also submitted a declaration claiming, "Within the past seven years, I have not received any payment, stock, or other compensation in exchange for any rights under the [patents-in-suit]." Decl. of Def. Stephen L. Trokel, M.D., Mar. 21, 2007, at 2; Decl. of Def. Francis A. L'Esperance, Jr., M.D., Mar. 21, 2007, at 2. These declarations, coupled with the undisputed documentary record of the assignment of the patents-in-suit, are more than sufficient to warrant summary judgment in favor of Trokel and L'Esperance on statute-of-limitations grounds.

### 2. Fraud

The New York statute of limitations for actual fraud is the longer of six years from the date on which the fraud occurred, or two years from the time when the plaintiff discovered or, with reasonable diligence, should have discovered the fraud. N.Y.

C.P.L.R. 213(8); County of Ulster v. Highland Fire Dist., 815 N.Y.S.2d 303, 306 (N.Y. App. Div. 2006).

Serdarevic asserted a fraud claim against Trokel, claiming that he concealed facts from her and misrepresented facts to her, to prevent her from taking actions that would have resulted in her being listed as an inventor of the patents-in-suit. Her only specific allegation in her fraud claim is that Trokel "had an opportunity and/or an obligation to disclose to Dr. Serdarevic the existence of patent filings directed to Dr. Serdarevic's inventions when he was controlling Dr. Serdarevic's access to [the] experimental apparatus essential to furtherance of the research that led to her conception and reduction to practice of the inventions of [three of the patents-in-suit], as well as influencing Dr. Serdarevic's opportunities to publish the fruits of her research . . . ." Second Am. Compl. ¶ 217; see also Serdarevic, slip op. at 24 (concluding that Serdarevic's "most specific allegation" of fraud "relates to the early 1980s and is that Trokel had an opportunity or obligation to disclose the existence of his patent filings").

Serdarevic was aware of the patents-in-suit by October 1998. Thus, even if Trokel had successfully concealed the patents-in-suit from Serdarevic from the 1980s until 1998, Serdarevic necessarily discovered or, with reasonable diligence, should have discovered that concealment when she learned of the patents-in-suit in 1998. The six-year limitations period for her actual and constructive fraud claims thus began to run in 1998. Her action was filed in 2006, well past the six-year limitations period. It is therefore barred by the statute of limitations.

On appeal, Serdarevic argues that the limitations period should have been tolled under the doctrine of equitable tolling. "Since the nature of a fraud or subsequent

actions taken by the defendant to conceal the fraud may have made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired, the courts fashioned the doctrine of equitable tolling to relieve the plaintiff of the rigor of the statutory bar." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985). "The essence of the doctrine [of equitable tolling] 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" Id. (quoting Long v. Abbott Mortgage Corp., 459 F. Supp. 108, 113 (D. Conn. 1978)). Serdarevic has not explained how anything that Trokel did after she learned of the patents-in-suit in 1998 "made it impossible for [Serdarevic] to discover the facts underlying [her] cause of action." The doctrine of equitable tolling is therefore inapplicable here.

C. Serdarevic's Rule 56(f) Motion

Serdarevic argues that the district court erred by denying her Rule 56(f) cross-motion for discovery, made in response to defendants' motions for summary judgment. At the time of Serdarevic's motion,[2] Rule 56(f) provided:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"We look to regional circuit 'procedural law for precedential guidance concerning practice under Rule 56(f).'" Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1300 (Fed. Cir. 2004) (quoting Biotec Biologische Naturverpackungen GmbH v.

---

[2]   Rule 56 was amended effective December 1, 2007, as part of the general restyling of the Civil Rules. The changes to Rule 56 were intended to be stylistic only. See Fed. R. Civ. P. 56 advisory committee's note (2007). Our analysis would be the same under the current version of the rule.

Biocorp, Inc., 249 F.3d 1341, 1355 n.4 (Fed. Cir. 2001)).  In the Second Circuit, the denial of a Rule 56(f) motion for discovery in response to a motion for summary judgment is reviewed for abuse of discretion.  Gualandi v. Adams, 385 F.3d 236, 244-45 (2d Cir. 2004).

The Second Circuit places a significant burden on a party seeking to avoid summary judgment by requesting discovery under Rule 56(f):

> [I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover.  "An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of the motion."

Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981) (citations omitted) (quoting Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978)); see also id. at 107 n.14 ("An 'opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'" (quoting 6 J. Moore, Federal Practice ¶ 56.16[3] at 56-486 to 56-487 (2d ed. 1976))).

On the issue of laches, Serdarevic requested that the district court permit discovery on whether the defendants would have made the same investments in the patents-in-suit even if Serdarevic had asserted her claims earlier.  On appeal, Serdarevic claims that she was entitled to discovery on:  (1) economic prejudice; (2) evidentiary prejudice "based upon destruction or unavailability of records"; (3) defendants' knowledge of her intent to pursue her claims; and (4) defendants' unclean hands.  Appellant's Br. at 40-41.  As the district court reasoned, discovery on the issue of economic prejudice was unnecessary, because the court found evidentiary prejudice

and therefore did not have to reach the issue of economic prejudice. <u>Serdarevic</u>, slip op. at 21. Likewise, discovery was not necessary on evidentiary prejudice based on "destruction or unavailability of records," because that was not the basis for the district court's rulings on evidentiary prejudice grounds. As to Serdarevic's requests for discovery on defendants' knowledge of her claims and unclean hands, Serdarevic has identified no basis—beyond "the conclusory allegations contained in [her] complaint"—on which to find that discovery would lend support to her claims. We therefore conclude that the district court did not abuse its discretion by denying Serdarevic's Rule 56(f) motion for discovery on laches.

Finally, we likewise conclude that the district court did not abuse its discretion by denying Serdarevic's Rule 56(f) motion for discovery on her unjust enrichment claim. Serdarevic speculates that, if she had been permitted to depose Trokel and L'Esperance, she might learn that they in fact had received some benefit from the patents-in-suit within the limitations period. For example, Serdarevic conjectures that "[i]f Trokel received stock in VISX in exchange for his rights in the patents-in-suit prior to 2000, and then had that stock cashed out when AMO bought VISX in May 2005 . . . , that surely . . . is a benefit received within the limitations period . . . ." Appellant's Reply Br. at 30. But Serdarevic's "mere hope that further evidence may develop" suggesting that Trokel and Serdarevic had—contrary to their declarations—received some undisclosed benefit from the patents-in-suit is not a sufficient basis to overturn the district court's decision to deny discovery under the deferential abuse of discretion standard. <u>See</u> <u>Contemporary Mission</u>, 648 F.2d at 107; <u>Neely</u>, 584 F.2d at 344.

## III.  CONCLUSION

For the foregoing reasons, we <u>affirm</u> the judgment of the district court granting the defendants' summary judgment motions and denying Serdarevic's cross-motion for discovery.

<u>AFFIRMED</u>