# United States Court of Appeals
# for the Federal Circuit

---

**SCA HYGIENE PRODUCTS AKTIEBOLAG**
AND **SCA PERSONAL CARE, INC.,**
*Plaintiffs-Appellants,*

**v.**

**FIRST QUALITY BABY PRODUCTS, LLC,**
**FIRST QUALITY HYGIENIC, INC.,**
**FIRST QUALITY PRODUCTS, INC.** AND
**FIRST QUALITY RETAIL SERVICES, LLC,**
*Defendants-Appellees.*

---

2013-1564

---

Appeal from the United States District Court for the Western District of Kentucky in No. 10-CV-0122, Chief Judge Joseph H. McKinley, Jr.

---

Decided: September 17, 2014

---

MARTIN J. BLACK, Dechert LLP, of Philadelphia, Pennsylvania, argued for plaintiffs-appellants. With him on the brief were KEVIN M. FLANNERY and TERI-LYNN A. EVANS.

KENNETH P. GEORGE, Amster, Rothstein & Ebenstein, LLP, of New York, New York, argued for defendants-

appellees.    With him on the brief were CHARLES R. MACEDO and MARK BERKOWITZ.

———————

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

SCA owns U.S. Patent No. 6,375,646 (the '646 patent), which relates to certain adult incontinence products. After SCA sued a competitor, First Quality, for infringement of the '646 patent, the district court dismissed the case, finding that SCA's claims were barred by both laches and equitable estoppel.   Because the district court properly concluded that SCA's more than six-year delay in filing suit warranted dismissal based on laches, we affirm the court's grant of summary judgment in that regard. But given SCA and First Quality's limited interactions, there remain genuine issues of material fact pertaining to equitable estoppel.   Accordingly, we reverse the district court's grant of summary judgment as to equitable estoppel and remand for further proceedings consistent with this opinion.

I

SCA[1] and First Quality[2] compete in the market for adult incontinence products.  On October 31, 2003, SCA sent a letter to First Quality, suggesting that certain First Quality products might infringe the '646 patent.   The letter stated:

———————

[1]    SCA refers collectively to plaintiffs-appellants SCA Hygiene Products Aktiebolag and SCA Personal Care, Inc.

[2]    First Quality refers collectively to defendants-appellees First Quality Baby Products, LLC; First Quality Hygienic, Inc.; First Quality Products, Inc.; and First Quality Retail Services, LLC.

It has come to our attention that you are making, selling and/or offering for sale in the United States absorbent pants-type diapers under the name Prevail® All Nites™. We believe that these products infringe claims of [the '646 patent].

We suggest that you study [the '646 patent]. If you are of the opinion that the First Quality Prevail® All Nites™ absorbent pants-type diaper does not infringe any of the claims of this patent, please provide us with an explanation as to why you believe the products do not infringe. If you believe that the products do infringe, please provide us with your assurance that you will immediately stop making and selling such products.

J.A. 544. First Quality responded on November 21, 2003, and stated:

As you suggested, we studied [the '646 patent] . . . . In addition, we made a cursory review of prior patents and located U.S. Patent No. 5,415,649, ("the '649 Patent"), which was filed in the United States on October 29, 1991 and is therefore prior to your client's '646 Patent. A review of Figs. 3 and 4 of the prior '649 Patent reveals the same diaper construction claimed by the '646 Patent. Thus, the prior '649 Patent invalidates your client's '646 Patent. As you know, an invalid patent cannot be infringed.

J.A. 547. These two communications were the only instances in which either party mentioned the '646 patent. SCA and First Quality exchanged four more brief letters over the next eight months before ceasing communications, but those letters concerned a different patent and different First Quality products.

On July 7, 2004—one day after SCA sent its final communication to First Quality—SCA filed an ex parte

reexamination request for the '646 patent. SCA asked the United States Patent and Trademark Office (PTO) to review the patentability of the '646 patent in light of the '649 patent and European Patent Application No. 0187727 A2. About three years later, on March 27, 2007, the PTO confirmed the patentability of all 28 original claims and issued several new claims added during reexamination.

SCA never notified First Quality about the reexamination proceedings. According to SCA, it believed it was under no obligation to do so because the PTO provides public notice of all reexaminations. *See* 37 C.F.R. §§ 1.11(c), 1.570(f). First Quality, meanwhile, stated that it no longer considered the '646 patent "to be an issue" after making its invalidity allegations. *SCA Hygiene Prods. AB v. First Quality Baby Prods., LLC*, No. 10-cv-0122, 2013 WL 3776173, at *10 (W.D. Ky. July 16, 2013) (internal quotation marks omitted).

Starting in 2006, while the '646 patent was under reexamination, First Quality began expanding its line of adult incontinence products. In 2008, after the reexamination had concluded, First Quality acquired Covidian's Tyco Healthcare Retail Group LP and, along with it, some of the products at issue in this case. It continued its expansion in 2009 at a cost of more than $10 million.

SCA claims that it began preparing to file suit against First Quality immediately after the reexamination certificate issued in March 2007. But SCA did not file suit or otherwise contact First Quality until August 2, 2010, when it filed its complaint in this case—about six years and nine months after SCA first contacted First Quality about the '646 patent. According to SCA, it spent more than three years after the reexamination concluded implementing new business management structures, evaluating outside counsel, and examining potentially infringing products on the market.

First Quality counterclaimed for declaratory judgments of noninfringement and invalidity. After the district court's claim construction order, First Quality moved for partial summary judgment of noninfringement and for summary judgment of laches and equitable estoppel. The district court granted First Quality's motion for summary judgment as to laches and equitable estoppel and dismissed the remaining motion as moot.

SCA appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

### A

Laches is an equitable defense to patent infringement that may arise only when an accused infringer proves by a preponderance of evidence that a patentee (1) unreasonably and inexcusably delayed filing an infringement suit (2) to the material prejudice of the accused infringer. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028–29, 1045 (Fed. Cir. 1992) (en banc). If these prerequisite elements are present, a court must then balance "all pertinent facts and equities," including "the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability" before granting relief. *Id.* at 1034. When found, laches bars retrospective relief for damages accrued prior to filing suit but does not bar prospective relief. *Id.* at 1041.

Delays exceeding six years give rise to a presumption that the delay is unreasonable, inexcusable, and prejudicial. *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998). Under this presumption, the burden of evidentiary production shifts from the accused infringer to the patentee. *Id.*; *see also* Fed. R. Evid. 301; *Aukerman*, 960 F.2d at 1035–36. Both of these presumptions disappear if the patentee can identify evidence sufficient for a reasonable jury to conclude either that the delay was

excusable or not unreasonable, or that it was not materially prejudicial. *See Wanlass*, 148 F.3d at 1337. If the patentee meets this burden of production, the accused infringer must prove both elements of laches by a preponderance of evidence. *Aukerman*, 960 F.2d at 1045.

B

Equitable estoppel may only arise when an accused infringer shows by a preponderance of evidence that (1) a patentee, acting on the basis of accurate facts, communicated something in a misleading way, by words, conduct, or omission, to an alleged infringer, (2) on which the accused infringer relied, (3) such that he would be materially prejudiced if the patentee is allowed to assert a claim that is inconsistent with his earlier communication. *See id.* at 1041, 1046. But "even where the three elements of equitable estoppel are established, [a court must] take into consideration any other evidence and facts respecting the equities of the parities in exercising its discretion and deciding whether to allow the defense." *Id.* at 1043. When found, equitable estoppel acts as a complete bar to a patentee's infringement claim. *Id.* at 1041.

Although an equitable estoppel defense may appear similar to a laches defense when a patentee has delayed filing suit, the two defenses are distinct. For example, unlike laches, equitable estoppel requires that a "plaintiff's inaction . . . be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* at 1042. Moreover, equitable estoppel requires that the defendant rely, to its detriment, on the patentee's abandonment. *See id.* at 1042–43. *See also Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 & n.1 (Fed. Cir. 1992). And a court may not presume that the underlying elements of equitable estoppel are present, regardless of how much time has passed. *Aukerman*, 960 F.2d at 1043.

C

The conclusion as to whether laches or equitable estoppel has been established is "committed to the sound discretion of the trial judge." *Id.* at 1028. Accordingly, we review conclusions about laches and equitable estoppel for abuse of discretion. *Id.*

But "[l]aches is not *established* by undue delay and prejudice. Those factors merely lay the foundation for the trial court's exercise of discretion." *Id.* at 1036. These two foundational inquiries are questions of fact. *See id.* at 1035 (referring to them as "the underlying factual elements" of laches); *id.* at 1038 (referring to "either factual element of a laches defense"); *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) ("[Laches] ultimately turn[s] on underlying factual determinations."). Similarly, the prerequisites of equitable estoppel are "factual elements . . . on which the discretionary power of the court rests." *Aukerman*, 960 F.2d at 1043.

Because the underlying elements of laches and equitable estoppel are questions of fact, we review ultimate findings as to those elements for clear error. *See* Fed. R. Civ. P. 52(a)(6); *Knowles v. Mirzayance*, 556 U.S. 111, 126 (2009); *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F.3d 1293, 1304 (11th Cir. 2009). After a grant of summary judgment, however, we review the underlying factual elements de novo[3] to determine whether any

---

[3]     We review this aspect of a court's summary judgment award under regional circuit law. *Sedarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1362 (Fed. Cir. 2008). In this case, the Sixth Circuit's de novo standard applies. *See Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007).

genuine issues of material fact remain.  Fed. R. Civ. P. 56(a); *see also Wanlass*, 148 F.3d at 1337.

When a trial court mistakenly concludes that the factual elements of laches or equitable estoppel have been established and grants relief, such error constitutes an abuse of discretion in the ultimate judgment.  *See Aukerman*, 960 F.2d at 1039; *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986) ("An abuse of discretion occurs when . . . the decision is based on an erroneous conclusion of law . . . [or] the court's findings are clearly erroneous.").  But if such error is absent, a trial court's grant of laches or equitable estoppel can be overturned only if it represents unreasonable judgment in weighing all pertinent facts and equities.  *See Aukerman*, 960 F.2d at 1039, 1043; *cf. Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006) (describing a similar fact/equity hybrid standard of review for inequitable conduct).

## III

We first turn to the issue of laches.  As a preliminary matter, SCA argues that *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), "compels a finding that [*Aukerman*] is no longer good law."  Notice of Supplemental Authority at 2, *SCA Hygiene Prods. AB v. First Quality Baby Prods.*, No. 2013-1564 (Fed. Cir. May 27, 2014), ECF No. 51.  In particular, SCA points out that the Supreme Court has never "approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations."  *Petrella*, 134 S. Ct. at 1974.

But *Petrella* notably left *Aukerman* intact.  *See id.* at 1974 n.15 ("We have not had occasion to review the Federal Circuit's position.").  Because *Aukerman* may only be overruled by the Supreme Court or an en banc panel of this court, *Aukerman* remains controlling precedent.  *See,*

*e.g.*, *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1366 (Fed. Cir. 2002).

A

SCA argues that the reexamination proceedings preclude application of the laches presumptions in this case because the reexamination period should be excluded from the total delay. The district court rejected that theory. In its view, because SCA filed suit more than six years after first learning of First Quality's allegedly infringing activities, the laches presumptions applied. We agree.

Whether SCA's delay was excusable relates to the question of whether it can rebut the presumption of unreasonable and inexcusable delay, not whether the presumption applies in the first place.[4] Because more than six years elapsed between the time SCA first learned of First Quality's allegedly infringing activities and the time SCA filed infringement claims directed to those activities, the district court properly found that the laches presumptions applied.

Accordingly, summary judgment was appropriate only if no reasonable jury could have concluded that SCA's delay was reasonable, excusable, or materially prejudicial. *See, e.g.*, *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463

---

[4] A number of cases suggest that a reasonable excuse may "toll" certain portions of the delay period for purposes of laches. But these cases are better understood as analyzing whether the purported justifications excuse the delay period. *See, e.g.*, *Sedarevic*, 532 F.3d at 1359; *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990), *overruled on other grounds by Aukerman*, 960 F.2d at 1038–39; *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1572–73 (Fed. Cir. 1987), *overruled on other grounds by Aukerman*, 960 F.2d at 1038–39.

(Fed. Cir. 1998).  We review this question under the Sixth Circuit's de novo standard.  *See Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007).  If no genuine issues of material fact remain, we must also review the district court's ultimate decision to grant or deny summary judgment for abuse of discretion.  *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995); *Aukerman*, 960 F.2d at 1039.

1

Reasonable explanations for delay include attempts to enforce the patent, such as filing suit against another infringer or participating in post-grant PTO proceedings.  *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876–78 (Fed. Cir. 1991).  SCA asserts that the '646 patent reexamination proceedings provide a reasonable excuse for its delay in filing suit against First Quality.

The district court disagreed.  It concluded that "SCA's stated reasons for delay in filing suit are legally insufficient to overcome the presumption of unreasonable delay."  *SCA Hygiene*, 2013 WL 3776173, at *6.  First, the court reasoned that, "[u]nder the facts of this case, notice by SCA of an intent to sue after the reexamination was required."  *Id.* at *5.  Second, the court "reject[ed] SCA's argument that it needed more than three years . . . to bring infringement claims against First Quality" following the reexamination.  *Id.*  Although we disagree that SCA was required to provide explicit notice of the reexamination proceedings to First Quality on the facts of this case, we nevertheless agree that SCA failed to rebut the presumption of unreasonable delay.

A patentee is not required in all cases to provide notice of related proceedings involving the asserted patent to show its delay was not unreasonable.  *Aukerman*, 960 F.2d at 1039.  For example, "[i]f a defendant is . . . aware of the [proceedings] from other sources, it would place

form over substance to require a specific notice." *Id.* Here, the PTO provided public notice of the reexamination proceedings on August 24, 2004. First Quality could have learned of those proceedings based on SCA's initial notice of the '646 patent, coupled with the PTO's subsequent notice of the reexamination. Under such circumstances, SCA was not required to provide notice of the reexamination to First Quality.

But even though SCA's delay during reexamination may have been excusable when viewed in isolation, we must examine whether SCA's delay, viewed as a whole, was excusable. The district court found that "SCA admitted that it has continuously tracked First Quality's activity since 2003 and has an entire department dedicated solely to competitive intelligence." *SCA Hygiene*, 2013 WL 3776173, at *5. SCA then continued to evaluate First Quality's products during the reexamination period. SCA was also represented by U.S. patent counsel when it sent letters to First Quality in 2003 and 2004 and during the reexamination proceedings between 2004 and 2007. *Id.* No evidence suggests that SCA was unable to find counsel or reinitiate contact with First Quality shortly after the reexamination ended. Moreover, "personal lack of familiarity with the patent system . . . does not excuse . . . failure to file suit." *Sedarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1360 (Fed. Cir. 2008).

Given the circumstances, SCA should have been prepared to reassert its rights against First Quality shortly after the '646 patent emerged from reexamination. *See Wanlass*, 148 F.3d at 1338 ("The availability of delay based on constructive knowledge of the alleged infringer's activities imposes on patentees the duty to police their rights."); 6A Donald S. Chisum, *Chisum on Patents* § 19.05[2][a][iii] (2013) ("Many decisions in finding delay excused emphasize that the patent owner promptly filed suit after the excuse (such as other litigation) ceased.").

But SCA remained silent for more than three years after the patent came out of reexamination.

Accordingly, SCA has failed to raise a genuine issue of material fact regarding the reasonability of its delay. Viewing all of the facts in the light most favorable to SCA, no reasonable fact-finder could conclude that SCA's delay, viewed as a whole, was reasonable.

2

There are two categories of prejudice in laches—evidentiary and economic. *Aukerman*, 960 F.2d at 1033. Evidentiary prejudice results when the patentee's delay hinders an accused infringer from defending against the patent suit. This may include, for example, the death of a critical witness, the dimming of memories, or the loss of documents. *Id.* "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit."[5] *Id.*

Economic prejudice cannot be attributed to losses merely associated with a finding of liability for infringement. *Id.* Rather, "[t]he courts must look for a *change* in the economic position of the alleged infringer during the period of delay." *Id.* For example, "[m]aking heavy capital investment and increasing production can constitute [economic] prejudice." *Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1272 (Fed. Cir. 1990). But there must be a demonstrable nexus between the alleged economic prejudice and the patentee's delay. *See, e.g., Hem-*

---

[5]    Because the district court was silent as to evidentiary prejudice and because the parties do not contest that issue here, we must assume there is no genuine factual dispute that First Quality did not suffer evidentiary prejudice. We therefore limit our discussion to economic prejudice.

*street*, 972 F.2d at 1293–94 ("It is not enough that the alleged infringer changed his position—i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity.").

This nexus requirement does not, however, require reliance on the patentee's delay. *Asics*, 974 F.2d at 1308 n.1. "[T]he question is whether . . . prejudice *resulted from* [the] delay," *id.* at 1308, and "there is a difference between prejudice that *results from* delay and prejudice that is due to *reliance upon* delay," *id.* at 1308 n.1. Economic prejudice *results from* a patentee's delay if the financial losses at issue "likely would have been prevented by earlier suit." *Aukerman*, 960 F.2d at 1033; *accord State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003); *Gasser Chair*, 60 F.3d at 775; *Asics*, 974 F.2d at 1307–08.

Here, the district court concluded that SCA failed to rebut the presumption that First Quality suffered economic harm, and we agree. First Quality made a number of capital expenditures to expand its relevant product lines and to increase its production capacity. The record evidence suggests that First Quality would have restructured its activities to minimize infringement liability if SCA had brought suit earlier.

SCA challenges this evidence by asserting that "[t]he District Court committed reversible error when it credited the self-serving, uncorroborated testimony of First Quality's witness, who was an in-house lawyer and not even a business person." Appellants' Br. 32. SCA is correct, of course, that the district court was not permitted to assess the credibility of First Quality's witnesses on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But SCA may not rely solely on pleadings and speculation to create a genuine issue of material

fact; it must identify particular evidence that creates such a dispute. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014).

SCA has not identified sufficient evidence relevant to this issue. SCA notes that First Quality considered its protective underwear business to be important and that its initiatives in that market were highly successful. SCA also relies heavily on a statement by First Quality's President, Mr. Damaghi, that "after sending [the November 21, 2003] letter this matter was never thought of again." J.A. 1171–72. Thus, SCA contends that "First Quality was motivated by a huge market opportunity and would have continued to grow its protective underwear business regardless of when SCA filed suit." Appellants' Br. 35–36.

But Mr. Damaghi's statement that "this matter was never thought of again" does not suggest that First Quality planned to ignore the issue whether or not SCA filed suit. *See SCA Hygiene*, 2013 WL 3776173, at *10 ("[W]e never heard back from [SCA], and as a result we did not consider it to be an issue because we did not know what, if any, issue existed for us to follow up on." (internal quotation marks omitted)). Moreover, there is no dispute that First Quality considered its protective underwear business to be important and that its initiatives in that market were highly successful. To suggest, based on this evidence alone, that First Quality would have continued its allegedly infringing activities regardless of when or whether SCA filed suit is pure speculation.

SCA has not identified any evidence that raises a genuine issue of material fact regarding First Quality's presumed economic prejudice.

B

SCA further contends that, even if it failed to rebut the laches presumptions, "it was an abuse of discretion for the District Court to refuse to consider the equities fully." Appellants' Br. 52. We agree that the district court should have evaluated the equities. The court seemed to treat laches as though relief was automatic so long as First Quality established the factual prerequisites of the defense. *See SCA Hygiene*, 2013 WL 3776173, at *3 ("If these factors are proven, laches bars the recovery of patent damages for any time period before the suit was filed." (internal quotation marks omitted)). Our law makes clear, however, that courts should grant relief for laches only after balancing "all pertinent facts and equities," including "the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability." *Aukerman*, 960 F.2d at 1034; *see also Gasser Chair*, 60 F.3d at 773, 775–76.

SCA points to (1) its alleged good faith in seeking reexamination of the '646 patent, (2) the PTO's public notice of the reexamination proceedings, and (3) the fact that the PTO granted new claims during reexamination. None of these factors, however, suggest that the district court's decision to grant summary judgment of laches constituted an abuse of discretion. The district court's failure to explicitly balance the equities in its decision was therefore harmless error. *See, e.g.*, *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1371 (Fed. Cir. 2004).

C

SCA argues for the first time on appeal that the district court erred by applying laches to the new claims issued during reexamination and to SCA's allegations against products introduced after 2008. As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120

(1976); *see also Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322–23 (Fed. Cir. 2008). Because SCA did not raise these issues in the district court and the district court did not rule on them, we do not consider them on appeal.

## IV

We next turn to the issue of equitable estoppel and review de novo whether genuine issues of material fact remain as to the prerequisite elements. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322; *Mazur*, 507 F.3d at 1016. Because there are no evidentiary burden-shifting presumptions in equitable estoppel, *see Aukerman*, 960 F.2d at 1028, 1043, First Quality possessed the burden of production.

## A

The first element of equitable estoppel requires SCA to have made a misleading communication, either affirmatively or by omission, to First Quality. The district court ruled that "SCA unquestionably misled First Quality though [sic] its 2003 letter and subsequent inaction." *SCA Hygiene*, 2013 WL 3776173, at \*9. The court focused on SCA's failure to respond to First Quality's letter addressing the '646 patent and on SCA's decision to write First Quality regarding different products and a different patent. In the court's view, "[w]hether this letter 'is viewed as a tacit withdrawal of the ['646 patent] or as misleading silence with respect to the ['646 patent], the result is the same, for it was reasonable for [First Quality] to infer that [SCA] was not continuing the accusation of infringement as to the ['646 patent].'" *Id.* (alterations in original) (quoting *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1311 (Fed. Cir. 2010)). We disagree.

"[S]ilence alone will not create an estoppel unless there was a clear duty to speak or somehow the patentee's continued silence reenforces the defendant's inference

from the plaintiff's known acquiescence that the defendant will be unmolested." *Aukerman*, 960 F.2d at 1043–44 (citations omitted); *see also Asics*, 974 F.2d at 1308–09. Although the most common example of equitable estoppel is a patentee who objects to allegedly infringing activities and then remains silent for a number of years, that silence must be "coupled with *other* factors, [such that the] patentee's 'misleading conduct' is essentially misleading inaction." *Aukerman*, 960 F.2d at 1042 (emphasis added); *see also Hemstreet*, 972 F.2d at 1295; *Asics*, 974 F.2d at 1308–09.

For example, in *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469 (Fed. Cir. 1998), the parties had been engaged in patent litigation over an older product. The accused infringer later informed the patentee that it planned to begin marketing a design-around product and stated that it "would consider the new product non-infringing unless [the patentee] advised . . . otherwise." *Id.* at 1470. The accused infringer sent samples of the new product to the patentee and sought its opinion, but the patentee never responded. During the three years that followed, the parties discussed the asserted patent at numerous meetings between high-level officials. *Id.* at 1470–71. A possible merger was even discussed. *Id.* at 1471. But, throughout that time, the patentee never suggested that it thought the accused infringer's new product line infringed. *Id.* The patentee only offered opinions about the older product line. Under those circumstances, we held that the parties' course of dealings was such that the patentee's silence amounted to misleading inaction. *Id.* at 1472.

Similarly, in *Aspex*—an opinion on which the district court relied heavily—the parties had been embroiled in a related patent litigation in the past. 605 F.3d at 1308. The accused infringer later began marketing a redesigned product similar to those that had been litigated, and the patentee threatened "to fully and vigorously enforce [its]

rights" under four related patents. *Id.* (internal quotation marks omitted).  In response, the accused infringer requested specific infringement contentions, but the patentee complied regarding only two of the patents.  It made no reference to the other two.  After three years of silence, the patentee renewed its objections with respect to one of the two patents for which it declined to provide specific infringement contentions.  Under those circumstances, this court stated that "[w]hether this sequence is fairly viewed as a tacit withdrawal of the . . . patent, or as misleading silence with respect to the . . . patent, the result is the same, for it was reasonable . . . to infer that [the patentee] was not continuing the accusation of infringement." *Id.* at 1311.

Compared to *Scholle* and *Aspex*, the interaction between SCA and First Quality reflected in the record is meager.  SCA and First Quality exchanged only six terse letters over a course of eight months.  And only two of those letters, sent within one month of one another, referenced the '646 patent or the accused products.  Unlike in *Aspex* and *Scholle*, First Quality never solicited further comment from SCA.  Thus, a reasonable juror may be less likely to infer that SCA's subsequent silence misled First Quality.  Moreover, the record does not suggest that the parties engaged in serious discussions involving the accused products or any related patent, let alone the '646 patent.  Nor does the record suggest that SCA and First Quality had been adversaries in prior related litigations or that they held any other close relationship.

Nevertheless, First Quality maintains that SCA's silence was tantamount to an admission that the '646 patent was invalid.  But "a mere verbal charge of infringement, if made, followed by silence [i]s not sufficient affirmative conduct to induce a belief that [the patentee] ha[s] abandoned an infringement claim." *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990),

*overruled on other grounds by Aukerman*, 960 F.2d at 1038–39. Here, SCA almost immediately filed a request for ex parte reexamination of the '646 patent to address the issues raised by First Quality—an action that could reasonably be viewed as inconsistent with SCA's alleged acquiescence. Thus, record evidence supports a version of events that differs from First Quality's. A reasonable juror could conclude that First Quality raised an issue SCA had overlooked and that SCA, rather than acquiescing, took immediate action.

To justify summary judgment of equitable estoppel, any inference that a patentee made a misleading communication by omission or acquiescence "must be the *only* possible inference from the evidence." *Aukerman*, 960 F.2d at 1044. That is not the case here. Accordingly, genuine issues of material fact remain as to whether SCA made a misleading communication to First Quality.

B

Equitable estoppel also requires that material prejudice to the accused infringer be caused by his reliance on the patentee's misleading communication. *Id.* at 1028, 1041–42. In this case, the district court found that no genuine issue of material fact remained with regard to First Quality's reliance. In its view, the testimonies of Messrs. Oppenheim and Damaghi conclusively established First Quality's reliance.

There is a difference between prejudice that *results from* a patentee's alleged misrepresentation and prejudice caused by *reliance upon* it. *Asics*, 974 F.2d at 1308 n.1. Although the former is sufficient to show a nexus for laches, the latter is required to show reliance for equitable estoppel. *Id.* As *Aukerman* explained, "[t]he accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action." 960 F.2d at 1042–43.

In this case, Mr. Damaghi testified that "after sending [the November 21, 2003] letter this matter was never thought of again." J.A. 1171–72. Although this testimony demonstrates that First Quality disregarded SCA's allegations involving the '646 patent, it does not necessarily establish that First Quality made capital investments and expanded its business in connection with SCA's subsequent silence. Mr. Damaghi's testimony acknowledges the possibility that some issues regarding the '646 patent may not have been fully resolved. *See SCA Hygiene*, 2013 WL 3776173, at *10 ("[W]e did not consider it to be an issue because we did not know what, if any, issue existed for us to follow up on." (internal quotation marks omitted)). And even the most rudimentary due diligence by First Quality would have revealed that SCA had filed a reexamination request for the '646 patent. Thus, a reasonable juror could conclude that First Quality's reliance, to the extent it can be established, was not reasonable.

Mr. Oppenheim's testimony also fails to establish First Quality's reliance. As in-house counsel, he testified that First Quality would not have made certain capital investments had it been involved in an earlier lawsuit over those products. Although that may show a nexus for purposes of laches, it does not necessarily establish that First Quality expanded its business after considering the implications of SCA's silence.

Accordingly, genuine issues of material fact remain as to whether First Quality relied on its own opinion that the '646 patent was invalid (or simply ignored the '646 patent), rather than relying on SCA's silence. *See Gasser Chair*, 60 F.3d at 776 (reversing a judgment of equitable estoppel because the accused infringer "believed the patent was invalid" and "paid little attention to [the patentee's] complaints"); *Hemstreet*, 972 F.2d at 1294–95 (reversing a judgment of equitable estoppel because of a complete absence of evidence that the accused infringer's

actions "were in reliance upon supposed actions of [the patentee], rather than a business judgment of its own").[6]

V

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, we affirm the district court's grant of summary judgment as to laches, reverse its grant of summary judgment as to equitable estoppel, and remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

No costs.

---

[6]    Having decided that issues of material fact remain as to the other elements of the equitable estoppel defense, we do not address whether First Quality suffered material prejudice. The district court may consider this element further on remand.