# United States Court of Appeals
# for the Federal Circuit

_____

**HEDWIG LISMONT,**
*Plaintiff-Appellant*

**v.**

**ALEXANDER BINZEL CORPORATION,
ALEXANDER BINZEL SCHWEISSTECHNIK GMBH
& CO. KG, IBG INDUSTRIE-BETEILIGUNGS-GMBH
& CO. KG, RICHARD SATTLER,**
*Defendants-Appellees*

_____

2014-1846

_____

Appeal from the United States District Court for the Eastern District of Virginia in No. 2:12-cv-00592-MSD-LRL, Judge Mark S. Davis.

_____

Decided: February 16, 2016

_____

FRANK PORCELLI, Fish & Richardson, P.C., Boston, MA, argued for plaintiff-appellant.

DOUGLAS A. DOZEMAN, Warner Norcross & Judd LLP, Grand Rapids, MI, argued for defendants-appellees. Also represented by AMANDA M. FIELDER.

_____

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge*.

This appeal arises from an inventorship dispute between Hedwig Lismont (Mr. Lismont) and Alexander Binzel Schweisstechnik GmbH & Co. KG (Binzel-Germany), Abicor Unternehmensverwaltungs GmbH (Abicor), IBG Industrie-Beteiligungs-GmbH & Co. KG (IBG), Richard Sattler (Mr. Sattler), and Alexander Binzel Corporation (Binzel-USA) (collectively, Appellees). The United States District Court for the Eastern District of Virginia granted summary judgment in favor of Appellees, concluding that Mr. Lismont's inventorship claim, which he filed ten years after the patent issued, was barred by laches. *See Lismont v. Alexander Binzel Corp.*, No. 2:12-cv-592, 2014 WL 4181586 (E.D. Va. Aug. 20, 2014). Because we agree with the district court's conclusion that the presumption of laches applies against Mr. Lismont's claim and that he failed to rebut that presumption, we affirm.

BACKGROUND

Mr. Lismont is a resident and citizen of Belgium. Binzel-Germany[1] is a German company that manufactures welding equipment, including welding contact tips for use in metal inert gas welding. Binzel-Germany is the owner of German Patent No. 197 37 934 (DE '934 patent) filed on August 30, 1997, which serves as the priority document for a PCT application filed in 1998. Binzel-Germany also owns the patent at the heart of this dispute, United States Patent No. 6,429,406 (the '406 patent), entitled "contact tip." The '406 patent, which issued in 2002 to Mr. Sattler, claims priority to the 1998 PCT application. The claims of the '406 patent are generally

---

[1]　Binzel-Germany is affiliated with Abicor and is wholly owned by IBG. Binzel-USA is a wholly owned subsidiary of Abicor and IBG.

directed to a method of manufacturing a contact tip for use in metal inert gas welding. The '406 patent explains that this process is more cost-effective than prior art methods.

Mr. Lismont asserts that, beginning in 1995, he developed the method of manufacturing contact tips disclosed in both the DE '934 patent and the '406 patent in response to Binzel-Germany's request for assistance in developing a lower-cost manufacturing process. Mr. Lismont further alleges that by mid-1997, he had fully developed his proposed manufacturing process and disclosed the details of the process to Binzel-Germany. Mr. Lismont also contends that, despite numerous representations from Binzel-Germany that he was the first to conceive of this method, Binzel-Germany filed the DE '934 patent application naming Mr. Sattler, a Binzel-Germany employee, as the inventor, rather than Mr. Lismont. Binzel-Germany filed its patent application on August 30, 1997, and one year later, on August 13, 1998, Binzel-Germany filed PCT Application No. PCT/EP98/05138 covering the same method of manufacturing contact tips. As with the DE '934 patent application, Binzel-Germany did not identify Mr. Lismont as an inventor on its PCT Application. This PCT Application resulted in issued patents in numerous countries, including the '406 patent in the United States.

On October 13, 2000, two years after the DE '934 patent issued, Mr. Lismont initiated litigation against Binzel-Germany in the German Regional Federal Court in Frankfurt, Germany (First German Litigation). In this litigation, Lismont maintained that he was the sole inventor of the subject matter disclosed in the DE '934 patent and therefore sought to change inventorship on the German patent.

In addition, on June 24, 2002, Mr. Lismont's attorneys sent a letter to the named inventor of the DE '934 patent,

Mr. Sattler, demanding damages for his purportedly false declarations of inventorship. The letter noted that Binzel-Germany had filed a patent application in the United States Patent and Trademark Office (PTO) and explained that, if Mr. Lismont did not receive compensation for his contribution toward inventing the claimed method, he would be "extensively assessing and pursuing your conduct and actions from every legal perspective." Joint Appendix (J.A.) 1554.[2] The letter further stated that if Binzel-Germany did not respond by July 5, 2002, Mr. Lismont would "initiate the necessary legal steps without further notice." *Id.* Neither Mr. Sattler nor Binzel-Germany responded. Accordingly, in December 2002, Mr. Lismont filed a second action in Germany (Second German Litigation) against Binzel-Germany, Abicor, and Mr. Sattler, seeking damages related to his inventorship claim. The complaint in the Second German Litigation also sought information about the countries in which Binzel-Germany was pursuing patents and information about the manufacture and sales of contact tips that used the method disclosed in the DE '934 patent.

Ultimately, the German courts ruled against Mr. Lismont in both cases for essentially the same reasons: that he failed to prove that he had an inventorship interest in the DE '934 patent. Specifically, on December 18, 2008, the German court concluded that Mr. Lismont had not proven that he was either the sole inventor or a joint inventor of the inventive process disclosed in the DE '934 patent. Mr. Lismont appealed this decision to the German Supreme Court, which rejected his appeal on November 25, 2009. After losing his inventorship claim and

---

[2] The record before us contains numerous English translations of documents from the German litigations. Neither party has challenged the accuracy of these translations.

his related claim for damages, Mr. Lismont also filed actions in the German Federal Constitutional Court and in the European Court of Human Rights. These two cases were not appeals from the German Supreme Court's rejection of his appeal, but were separate actions claiming that the earlier proceedings amounted to a denial of basic due process in violation of his constitutional or human rights, respectively.

On October 31, 2012, twelve years after Mr. Lismont initiated the First German Litigation, he initiated the underlying litigation seeking, among other things, to correct inventorship of the '406 patent under 35 U.S.C. § 256(a). After the parties engaged in discovery tailored to the issue of laches, Appellees filed a motion for summary judgment asserting that Mr. Lismont's inventorship claim was barred by laches. The district court agreed and entered judgment in favor of Appellees. Mr. Lismont filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"Laches is an equitable defense that may bar an inventorship claim." *Serdarevic v. Advanced Med. Optics., Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008). To prevail on a defense of laches, a defendant must establish that (1) the plaintiff's delay in filing a suit was "unreasonable and inexcusable"; and (2) the defendant suffered "material prejudice attributable to the delay." *A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1317 (Fed. Cir. 2015) (en banc). Further, a rebuttable presumption of laches attaches whenever more than six years passes from the time a purportedly omitted inventor knew or should have known of the issuance of the relevant patent. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1163 (Fed. Cir. 1993); *Serdarevic*, 532

F.3d at 1358.  This presumption of laches may be rebutted if the plaintiff "offer[s] evidence to show an excuse for the delay or that the delay was reasonable" or by offering "evidence sufficient to place the matters of defense prejudice and economic prejudice genuinely in issue."  *Aukerman*, 960 F.2d at 1038.

Here, the district court concluded at the summary judgment stage that Mr. Lismont's inventorship claim was barred by laches.  We review the grant of summary judgment under the law of the regional circuit.  *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013).  The Fourth Circuit generally reviews the grant or denial of summary judgment *de novo*. *See Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir. 1991). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The issue of laches, however, "is committed to the sound discretion of the district court."  *Aukerman*, 960 F.2d at 1032.  Because the factors underlying a laches determination—unreasonable delay and prejudice—are factual in nature, genuine issues of material fact as to these factors will preclude summary judgment in favor of the defendant.  For this reason, "[w]hen reviewing a laches decision rendered on summary judgment, this court reviews for an abuse of discretion unless genuine issues of material fact preclude summary judgment." *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1334 (Fed. Cir. 2012).

If the presumption of laches attaches, a plaintiff may defeat summary judgment by "rais[ing] a genuine dispute as to either delay or prejudice."  *Hemstreet v. Comput. Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992).  If the plaintiff makes such a showing, the presumption dissolves and the defendant is then "put to its proof on both factors" and "must affirmatively prove (1) unreasonable and inexcusable delay and (2) prejudice

resulting from that delay." *Id.* If, however, we agree with the district court that there are no genuine issues of material fact, we may set aside the imposition of laches if "the decision rests on an erroneous interpretation of the law or on clearly erroneous factual underpinnings." *Serdarevic*, 532 F.3d at 1358; *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) ("The court has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." (internal quotation marks omitted)).

On appeal, Mr. Lismont first asserts that the district court should not have applied the laches presumption against his inventorship claim. Alternatively, Mr. Lismont seems to argue that his litigation in the German and European courts served as notice to Binzel-Germany that an inventorship suit in the United States was likely forthcoming and thus was sufficient to excuse his delay and rebut the presumption of laches. We address each argument in turn.

## I. Presumption of Laches

The district court found, based on a statement made by Mr. Lismont to the German court, that Mr. Lismont undisputedly knew by February 12, 2001, that Binzel-Germany and/or Mr. Sattler had already filed the application that eventually issued as the '406 patent. Because Mr. Lismont knew of the application before the '406 patent issued, the district court concluded that the laches clock started to run when the '406 patent issued on August 6, 2002. *See Pei-Herng Hor*, 699 F.3d at 1335 ("[T]he laches clock [can]not start to run—at the earliest—until the patent issue[s]."). More than ten years later, on October 31, 2012, Mr. Lismont initiated the present action. Given that this delay exceeded six years, the district court found that the rebuttable presumption of laches attached. *Serdarevic*, 532 F.3d at 1358 ("'A delay

of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches.'" (quoting *Advanced Cardiovascular Sys.*, 988 F.2d at 1163)).

Mr. Lismont argues that he did not delay in initiating the underlying action because he had been diligently seeking to vindicate his inventorship rights in German and European courts. Mr. Lismont further asserts that he specifically sought resolution of the '406 patent inventorship issue in the Second German Litigation when he requested "worldwide damages, including in the U.S., and a worldwide declaration of liability, including in the U.S." Appellant Br. 25. Thus, according to Mr. Lismont, the parties have been litigating inventorship of the '406 patent in Germany since he filed the Second German Litigation in 2002 and the presumption of laches is therefore inappropriate.

We disagree. The relevant inquiry for the laches presumption is whether more than six years passed between the time when the inventor knew or should have known of the subject patent and the time the inventor initiated litigation. *See Aukerman*, 960 F.2d at 1034. As the district court correctly recognized, Mr. Lismont was aware that Binzel-Germany had filed a U.S. patent application covering the manufacturing method he allegedly invented before the '406 patent issued. Accordingly, to avoid the imposition of the rebuttable laches presumption, Mr. Lismont should have filed his United States inventorship litigation within six years of August 6, 2002, the date on which the patent issued. Because it is undisputed that he waited more than ten years from that date to initiate this litigation, the district court correctly found that the presumption of laches attached.

As to Mr. Lismont's contention that he was attempting to correct the inventorship of the '406 patent in his foreign litigation, he has not pointed to any allegations in

his German or European litigations in which he sought to correct the inventorship of the '406 patent.[3] In his complaint in the Second German Litigation, Mr. Lismont requested that Binzel-Germany "issue the plaintiff information, when and where the protected invention specified . . . was also registered and if applicable where it was published or rather issued, as well as to provide the plaintiff information about the respective current process status." J.A. 694. In addition, the complaint seeks "a rendering of accounts regarding the scope of the preceding and committed acts and . . . a description of the quantity of the goods manufactured, as well as the individual deliveries by designating the delivery quantity, delivery price, and the names and addresses of the recipients." *Id.* Finally, the complaint asks the German court "[t]o determine that the defendants are obligated as joint debtors to make up for all losses incurred by the plaintiff, which were committed against him through the acts [alleged in the complaint] and the losses that will be incurred in the future." *Id.* Based on these statements in the complaint, a fact-finder could conclude that Mr. Lismont was seeking compensation for worldwide damages, but there is noth-

---

[3] This argument is based on the questionable assumption that, even if properly presented, the German court could or would resolve the issue of inventorship on the '406 patent such that no litigation in the United States would be necessary. Mr. Lismont has not pointed to any authority supporting the proposition that a German court may declare rights under a United States patent. In fact, Mr. Lismont's attorney acknowledged at oral argument that even if the German courts had discussed inventorship of the '406 patent, an action in the United States would have nevertheless been necessary to correct inventorship on the '406 patent. *See* Oral Argument at 4:26–4:48 *available at http://oralarguments. cafc.uscourts.gov/default.aspx?fl+2014-1846.mp3.*

ing in the complaint indicating that he was also asking the German court to correct the inventorship on the '406 patent as provided by 35 U.S.C. § 256.

For these reasons, Mr. Lismont's argument that he was continuously litigating the issue of inventorship of the Binzel-Germany's United States patent fails. We therefore affirm the district court's conclusion that a presumption of laches was appropriate in this case.

## II.  Rebutting the Presumption

Although Mr. Lismont's litigation abroad may not be used to avoid a presumption of laches, it may help to rebut that presumption. *Serdarevic*, 532 F.3d at 1359–60 (holding that one option for overcoming the presumption of laches is to rebut it with "evidence to show an excuse for the delay or that the delay was reasonable").[4] We have previously recognized that "[a] patent owner may avoid the consequences of what would otherwise be an unreasonable delay in filing suit by establishing that he or she was engaged in 'other litigation.'" *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876–77 (Fed. Cir. 1991). We have also recognized that it is not an abuse of discretion to consider litigation

---

[4]    In addition to deciding that Mr. Lismont could not prove that his delay was either reasonable or excusable, the district court also concluded that Mr. Lismont had failed to rebut the presumption by showing the existence of a genuine issue as to prejudice. Mr. Lismont does not, however, raise this as a ground for reversal in his opening brief. To the extent his reply brief can be construed as objecting to the district court's conclusions on the prejudice factor, this argument is waived. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("[A]n issue not raised by an appellant in its opening brief . . . is waived.").

in fora outside the United States when determining excusable delay. *See Mainland Indus., Inc. v. Standal's Patents Ltd.*, 799 F.2d 746, 749 (Fed. Cir. 1986) (overruled on other grounds by *A.C. Aukerman*, 960 F.2d at 1038–39) ("[W]e are unwilling to say as a matter of law that litigation in non-United States forums cannot be considered in determining excusable delay . . . ."); *see also* 6A Donald S. Chisum, Chisum on Patents § 19.05[2][b][i] (Matthew Bender) (recognizing that proceedings including "court action in a foreign country concerning the same invention and similar issues of fact and law" could be used to excuse delay, "subject to the notice requirement applied to litigation").

For other litigation to excuse a plaintiff's delay, however, the defendant must have adequate notice of the other proceedings as well as plaintiff's intention to pursue its patent rights upon completion of the other proceedings. *Vaupel*, 944 F.2d at 877. "What is important is whether [the defendant] had reason to believe it was likely to be sued." *Id.* at 878. For example, in *Vaupel*, we found that a plaintiff's delay in filing suit could be excused by its engagement in reissue proceedings in which the defendant participated so long as "the evidence as a whole show[ed] that the accused infringer was in fear of suit." *Id.* Specifically, the evidence in *Vaupel* supported the conclusion that the infringer was in fear of suit based on (i) a letter sent by the plaintiff to the defendant declaring that it would "protect its [U.S. patent] and look after our rights" and requesting discussions with the defendant before "plunging into court proceedings"; (ii) a letter sent by the defendant to the PTO during the reissue proceedings acknowledging the "continued threats of infringement"; and (iii) a letter sent by the defendant to the plaintiff during the same time period threatening a declaratory judgment action. *Id.* We thus found that the defendant was sufficiently aware of the threat of litigation upon completion of the reissue proceedings. *Id.*

Although the "other litigation" excuse is typically invoked when a plaintiff is serially asserting its patents against different defendants, in circumstances like those presented in this case, the defendant in the foreign litigation must likewise receive adequate notice that the plaintiff intends to later pursue its rights under United States patents after termination of the proceedings in the foreign jurisdiction. We agree with the district court that the mere initiation of patent litigation in a foreign jurisdiction and the existence of United States patents are not sufficient to notify a defendant that the plaintiff will eventually seek to assert its patent rights in the United States.

Mr. Lismont points to three possible sources of the requisite notice.[5] Mr. Lismont first points to a document filed in the First German Litigation in which he stated that "the witness Sattler has applied for the patent that is in dispute here in the Unite[d] States in his own name as inventor" and then stated that an "extension of claim according to § 263 ZPO is therefore expressly reserved." J.A. 1556. Mr. Lismont contends that this statement notified Binzel-Germany that he was reserving his right to assert correction of inventorship on the '406 patent. Mr. Lismont is incorrect. "ZPO" refers to the German Code of Civil Procedure and section 263 of the German Code of Civil Procedure permits amendments to pleadings

---

[5]    On appeal, Mr. Lismont does not maintain his argument that his delay should be excused because of the parties' settlement negotiations between July and September 2012. Even if he had, however, the district court was correct to conclude that "a tolling of the laches period for three months [during these settlement negotiations] would make little difference . . . , as the overall time between the issuance of the U.S. patent and the filing of Plaintiff's action . . . amounts to nearly a decade." *Lismont*, 2014 WL 4181586, at *8.

pending in a German civil action. Thus, Mr. Lismont's reference to "§ 263 ZPO" reserves only his right to "extend" his German claim in front of the German court. Nothing in this statement could lead a reasonable fact-finder to infer that Mr. Lismont communicated his intent to pursue a separate inventorship claim in a United States court.

Next, Mr. Lismont relies on the June 2002 Letter to Mr. Sattler. In this letter, he (i) noted the filing of a U.S. patent application naming Mr. Sattler as the inventor; (ii) advised that Mr. Lismont would "carefully examine and prosecute your conduct and actions in all legal respects"; and (iii) notified Mr. Sattler that failure to pay damages would result in the initiation of "appropriate legal action with no further notification." J.A. 1396–97. Again, this communication lacks any indication that Mr. Lismont intended to commence legal proceedings to correct inventorship *in the United States*.[6] In fact, approximately six months after sending the letter, Mr. Lismont followed through on his threat to pursue further legal action by filing the Second German Litigation in December 2002. Mr. Lismont has not pointed to anything in the record from which a fact-finder could conclude that Binzel-Germany expected further litigation after completion of the Second German Litigation, especially not in a forum other than Germany.

Mr. Lismont's request in Germany for "worldwide damages" does not alter this conclusion. There are no assertions in the complaint filed in the Second German Litigation indicating that Mr. Lismont was pursuing the issue of inventorship as to the '406 patent. More im-

---

[6] It is also worth noting, at the time of this letter, the '406 patent had not yet issued. Thus, at the time this letter was sent, there was not yet a United States patent to be litigated.

portantly, there are no assertions in the complaint that could serve to notify Binzel-Germany that this issue would eventually be litigated in the United States if left unresolved upon conclusion of the litigation abroad.

Thus, because the plaintiff did not provide any notice to the defendants in a foreign patent dispute that it would pursue litigation in the courts of the United States against the same defendants upon termination of the foreign litigation, it is not an abuse of discretion to find that laches bars the later claim.

CONCLUSION

For these reasons, we conclude that the district court correctly imposed the presumption of laches and properly determined that Mr. Lismont had not presented any genuine issues sufficient to rebut the presumption. We therefore hold that the district court did not abuse its discretion when it held Mr. Lismont's claim barred by laches.[7]

**AFFIRMED**

COSTS

No Costs.

---

[7] In his reply brief, Mr. Lismont requested that we strike the portions of Appellees' brief discussing collateral estoppel. Because our decision does not turn on these contents, we deny Mr. Lismont's motion as moot.